Good morning, Your Honor. I'm Rick Colbert from Nashville, Tennessee for Mr. Geller. I'd like to reserve two minutes of my time for rebuttal. All right. This is an appeal from a summary judgment by the district court for the Western District of Tennessee in an age discrimination case. Mr. Geller was 64 years old at the time of the events in the case. He was a licensed educator in Tennessee in the Henry County school system. But even though he was a licensed educator, wasn't one of the essential qualifications that he have is an administrative license, which he did not have at the time he got the job, never obtained, and didn't have at the time he was removed? He did not have an administrator license. That is true. It was not one of the essential qualifications of the job. At the time he was hired, the record shows that the director of schools was a Mr. Rick Kresge, who hired him as an assistant principal with knowledge that he did not have an administrator license, told him all that he required him to obtain a master's degree, but told him he would not be required to have an administrator's license to serve as an assistant principal.  So he obtained his master's degree as required. He got the job in 2006, and he had his master's degree by 2008. He was a different director of schools, isn't that right? That hired him, yes. And then in 2009, the state issued some revised licensure requirements, but the requirement of an administrator license for an assistant principal only applied to somebody who spent 50 percent or more of their time in instructional leadership, whatever that means. Let me just say at the outset, it seems to me the issue is not whether, in fact, he did 50 percent or more of that instructional leadership. The issue is whether he, in fact, demoted your client because he didn't have a license, regardless of whether he needed one. If, in fact, that's the only reason he did this, it's not age discrimination. So shouldn't we just be focusing on whether there's evidence that it was pretextual? I believe that's true. As opposed to whether, in fact, the 50 percent. And I believe that's true, and I believe that's where the district court was in the decision. The district court assumed there was a prima facie case and went straight to the issue of pretext, and I believe that's where we are here. I think the problem, though, is I don't believe that the district court viewed the evidence through the prism of a motion for summary judgment, where all the evidence is to be viewed and all the inference is drawn in the light most favorable to the nonmoving party here, Mr. Geller. Mr. Geller was not required in response to a motion for summary judgment to prove pretext. In this court's case in Blair v. Henry Filters, the court explained that under St. Mary's Honor Center and Reeves, to survive summary judgment, a plaintiff need only produce evidence of pretext and rebut but not disprove the proffered nondiscriminatory reason. This record we submit contains ample evidence from which a jury, try or effect, could find pretext. And I can laundry list some of those things. The license requirement that Mr. Miles, the director, says he relied on, which was his sole justification for this decision, had been in effect for two prior years. That license requirement went into effect for Mr. Miles. He was at the end of his second year as the director. That license requirement had actually been in effect a year before that. But does the record show that he had any reason to know that your client didn't have that license? In fact, your client's actions sort of brought this to the fore. Your client admitted that he submitted a form requesting that his nonexistent license be upgraded. And he was hoping to get an initial license through this kind of subterfuge. And the response to that action of his is what brought this to Mr. Miles' attention, isn't it? Well, Judge Donald, I don't think it was a subterfuge. It is true what she just said. But my client went to a continuing education thing. And at the end of the program, according to his testimony, they were given forms to upgrade their licenses. He filled out the form. And I believe he thought he was going to have to believe his testimony reflects he thought that may be a way for him to get what he thought was the beginning administrator license, which had actually been replaced by a different kind of beginning license, interim license. And then the letter came back saying what all the requirements for a license were. And Mr. Miles says that's what brought it to his attention. But Mr. Miles was the director of schools, and he's presumed to know the qualifications of Mr. Geller. He's presumed to know the requirements for a licensure. And it was his responsibility to know these things. But at any rate, he meets with Mr. Geller about this letter. And the letter clearly says if you don't spend 50% or more of your time, the license requirement applies to somebody who spends 50% or more of your time on instructional leadership. All right, and no one knows what that means. And it appears to have been Mr. Miles' position that, you know what, everybody under my watch has got to have one of these. That's right. Mr. Miles took the position he didn't care whether he spent 50% of his time. Now, that is a perfectly lawful position for him to take, right? Well, it's- As far as the federal discrimination laws go. It's a lawful position to take if that was the position that he indeed took, if a jury finds that that was indeed his view. But at a later meeting, according to the testimony, Mr. Miles admitted, well, yes, I guess I could have called the state to gain clarification of the 50% requirement, and I didn't. And I could have called the principal to find out what you were doing, and I didn't. Now, what can we- That's not inconsistent with his view of, yeah, but I didn't because I don't really- you know, I have a policy of everyone has the administrators. Well, that's right. And if a jury believes that that is his policy, a policy that he just made up and didn't apply for two prior years, then the jury could accept that. But here's the other problem with that. He asked Mr. Geller, what do you have to do to get an administrative license? Mr. Geller says, I have to take 15 to 18 hours of coursework, pass a praxis exam. And Mr. Miles said, well, I need to do that before school starts in five weeks. And Mr. Geller told him, it's not possible that I do it in five weeks. And he said, well, okay, then you can't be the assistant principal. So he gives him a shot at it. He gives him an impossible shot. Well, but- It's a five-week shot. Right. But here's-I mean, I would submit to you that it's your burden to show the impossibility. Fifteen hours plus a test in five weeks does not strike me as facially impossible. Isn't it the plaintiff's burden? And I'm asking, is there anything in the record that shows, in fact, it would be impossible to do it in that time frame? Just the plaintiff's testimony. Okay. Well, I mean, I suggest, you know, maybe it's possible you needed to do a little more to show that it's actually-I mean, it doesn't sound like putting a man on the moon to, you know, do 15 hours of something in a month and take a test. Well, I mean, 15 hours of coursework is-you know, I mean, who knows whether there were even classes- We all know how college classes work. Fifteen hours can be a semester. I mean, that can be a whole semester of college coursework. So-but the problem was he fills the position with a 39-year-old woman. She leaves in a year. He reposts the position, and when he reposts the position, he says in the posting, anybody who applies either needs to have a license or can have a year to get a license. See, Mr. Miles said he had the authority to waive the licensure requirement if he wanted to or to allow more time, and he posts the position one year later when it becomes open again. He posts that position with a notice in the posting that an applicant will either have a license or a plan to get one in a year. So he was-he's sitting there across the table from Mr. Geller, who's done an excellent job as an assistant principal for six years, who says, I can't get a license in the five weeks you're giving me, and Mr. Miles says, well, you're out of the job. But one year later, Mr. Miles posts the same position with a notice that says a good applicant can have a year to get that license. So I submit that that is evidence that a jury could view as evidence of pretext that Mr. Miles' insistence that he had to have the license right then was not the real reason for the removal from the position. The bottom line is, Your Honor, I believe this is a case where the evidence is such, when viewed in the light most favorable to the plaintiff, that a jury could find pretext. Again, at the summary judgment stage, we're not deciding the ultimate question of whether there was age discrimination. If a jury finds pretext, finds that the reason's not believable, that, along with the prima facie case, will allow a jury to infer that the motive was age discrimination. And so we submit that this case should be reversed and remanded for a trial on the merits. Thank you. Good morning. Jennifer Craig for the Henry County Board of Education. What I'm not hearing is any evidence of age discrimination in this lawsuit. What we've been given is that he was a 64-year-old man at the time and was placed by someone that was 39. The facts in the case show that while- In terms of age discrimination, does it make any difference that he was about to retire and these decisions might have affected his retirement benefits? It is unfortunate that he was about to retire, but that was not the reason why he was transferred within the system. When Mr. Miles found out he did not have the appropriate licensure that he felt was required for an assistant principal, he had to transfer him or let him go. In fact, he found him another job within the system and, on two separate occasions, tried to help him with supplements to that income because he knew it would affect his retirement at the time. Both parties stated in that meeting that Mr. Miles said to Mr. Geller, we wouldn't be sitting here having this conversation or maybe having to transfer you if it had not been brought to my attention by Dr. Nye with the Department of Education that you did not hold the appropriate license at the time of the decision the transfer was made. Again, just because he was replaced by a younger woman, it goes on with the testimony showed by Dr. McFerrin, Mr. McFerrin, the principal. While he didn't have the recommendation, Mr. Geller, to move to a different position, it was not the director of schools who sought out Renee Lassiter, the replacement. She was actually contacted by someone else within the school system saying, hey, I think you would be a good candidate for the job. At that point, Mr. McFerrin and another individual interviewed several different candidates and they make a recommendation that she is the appropriate one for the job. Notice in Mr. McFerrin's deposition on page 40, when he goes to Mr. Miles and says, here's my recommendation for the assistant principal since you're having to move somebody out, that Mr. Miles initially wasn't real keen on the idea. He had to lobby for Ms. Lassiter who was ultimately given the job. So it's not as if the director of schools sought out a younger female to replace him once he learned that he did not have the appropriate licensure. And with regard to these type of transfers, I don't think it's disputed that the director of schools can transfer within the school system. Teachers only have tenure as teachers. Administrators don't have tenure as administrators. They're simply teachers, and they can be moved throughout the school system to different positions based upon the efficiency of the school system and what the director of schools thinks is appropriate. And in this situation, he felt that a licensure, which required this additional coursework and passing of a praxis test to be in that position necessary, and when he found out in June that he did not have that appropriate passage of the test and appropriate additional coursework, that he considered him a liability to be in that position when he is involved in some type of instructional leadership, which, again, we don't quite have a thorough definition from the state, but it does involve overseeing teachers. He was doing evaluations. He was leading certain teacher groups, and therefore he was over teachers in some type of instructional capacity at least a portion of his time. Well, Mr. Colbert argues that subsequently Mr. Miles, a year later, made a posting which allowed an applicant to have up to a year to get the necessary requirements and that that's an issue of age-based discrimination. How do you respond to that? How I would respond to that is that Mr. Miles does not have the discretion to waive the license himself. That has to come through the Department of Education. You have to submit a form, a waiver form, that says that you have done an exhaustive search throughout the school system area, your applicant pool, and nobody is qualified for that position and that the person that you want the waiver for is going to do the necessary coursework in order to get that license. So that's his ability to get someone in if no one else has that appropriate license and interviews for the position. Thank you. I don't have anything additional if there's any other questions. Is the plaintiff entitled to benefit from some sort of estoppel argument based on the fact that at one point in time he was told that all he had to do was get a master's degree? That was under the old licensure requirements before 2009. At that point, the previous director of schools said, I need a master's. In 2009, the requirements changed within the state of Tennessee to require a licensure if you're in 50% or more of instructional leadership. So at that point, he knew, the plaintiff knew from 2009 to 2011, if he wanted to reign that position, if that was a requirement by the state or by the director of schools, that he needed to obtain that licensure, and he never attempted to do so. There was no grandfathering provision? No grandfathering provision at the time. All right. Thank you. Thank you. I would like to point out in response to the last question that if the change in licensing requirements in 2009 really didn't affect Mr. Geller, if his testimony is to be believed at this point, and on summary judgment it is to be believed, that he spent less than 50% of his time in instructional leadership. His licensing requirement didn't change any. The 50% requirement, he didn't meet that 50% threshold to require a license. So from 2006 on, as far as state requirements for a licensure went, there was no change for him. I think this gets back to Judge Kethledge's question, regardless of the 50%, if this was a Sam Miles requirement, was that a legitimate requirement by Sam Miles? And, again, I think if we focus on it that way and disregard the 50%, then we really are down to the question of pretext, and is Mr. Miles to be believed when he says this was my requirement, that an assistant principal has to have a license? As far as the waiver goes, the vacancy notice, which was less than 10 months after this decision was made to demote Mr. Geller, it's in the record at page ID 515. It says applicants should possess a valid Tennessee administrator license or document a plan, a document of plan for completion within one year. And then when Mr. Miles was asked about that and about whether he had the power to waive the requirement or not, his testimony as the director of schools, and we're talking about his belief and his requirements and what he wanted and what he expected, and this is on pages 71 and 72 of his deposition, he was asked, so if somebody came along and applied for an assistant principal position and didn't have an administrator license, you would consider them as long as they had a plan to get one within a year. And he said, or if it was a good candidate, we could waive that. And then he went on and I said, so you could waive them having an administrator license if it was a good candidate? And he said, well, if you didn't have a candidate and you knew that would have been a good one, yes. This is what you're looking for generally in an applicant. So Mr. Miles, the director of schools, regarded himself as having the authority, the discretionary authority to decide whether this license was required or not, and less than a year after he demoted this individual for not having one, he was willing to waive it for at least a year, maybe more, for a good applicant, whatever that was. All right. Thank you. The case is submitted. You may call the next case.